GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. Z. MOORE.

No. 1363.   Decided December 5, 1904.

**1.—Carriers of Passengers—Way Station—Through Train.**

Railways making other and sufficient provisions for local travel may run trains for through passengers not stopping at way stations, or stopping there only to receive and discharge passengers on coupon tickets for passage over their own and other lines.   (Pp. 304, 3 05.)

**2.—Same—Interstate Commerce Regulation—Action in State Court.**

The right of action given by section 3 of the interstate commerce law prohibiting undue preferences by railways can be enforced only in the tribunals on which jurisdiction is conferred by that act—in the United States courts or before the Interstate Commerce Commission—and does not sustain an action in the State court for failing to stop at a way station to discharge a passenger by rendering the discrimination made by the carrier in that regard between passengers holding tickets of different character an unlawful one.   Whether the statute, if applicable, had that effect, is questioned but not decided.   (Pp. 305-307.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Johnson County.

*Ramsey & Odell* and *J. W. Terry,* for plaintiff in error.—The district Court of Johnson County was without jurisdiction to enforce the clause of the interstate commerce law upon which its charge was based, as the act of Congress conferred exclusive jurisdiction to enforce that law on the Federal courts.   When a right is created by statute and such statute provides a remedy in a particular court, the remedy in that court is exclusive.   Wills on Jurisdiction, sec. 154; Endlich on Interp. of Stats., secs. 154, 433, note; Sedgwick on Stat. Const., 76.

Permitting the through train to stop at Venus for passengers holding tickets over connecting lines of railroad, while denying such privilege to passengers holding local tickets on defendant's railroad, did not subject the plaintiff to any undue or unreasonable prejudice or disadvantage, or give any undue or unreasonable preference or advantage to any other person, within the meaning of the act of Congress.   Interstate C. C. v. Baltimore & O. Ry. Co., 145 U. S., 276, 277; Texas & P. v. Interstate C. C., 162 U. S., 219-221; Cleveland C. C. & St. L. Ry. Co. v. Illinois, 177 U. S., 514

A railroad has the right to promulgate rules regulating the stations at which certain of its trains will or will not stop   The court erred in its charge by practically nullifying such right.   International & G. N. Ry Co. v. Hassell, 62 Texas, 256; Texas & P. Ry. Co. v. White, 4 Texas Civ. App., 452; Beauchamp v. International & G. N. Ry. Co., 56 Texas, 239; England v. International & G. N. Ry. Co., 73 S. W. Rep., 24; Texas & P. Ry. Co. v. Cole, 66 Texas, 564.

*Ward & Plummer,* for defendant in error.—The Gulf, Colorado & Santa Fe Railway Company having been chartered and constructed under the laws of the State, the police power which is an attribute of the sovereignty of the State extends to the regulation and control of

the business of the company within the territorial jurisdiction of the State, so far as the same is necessary to prevent injury to persons or property, or in case passengers should be injured to give such passengers an adequate remedy in the courts of the State against the company for such injury. Armstrong v. Galveston H. & S. A. Ry. Co., 92 Texas, 121; 22 Am. and Eng. Enc. of Law, 2 ed., 918-923; 17 Id., 55, 56; Cooley's Const. Lim., 5 ed., art. 581.

A grant of jurisdiction to a particular court, without words of exclusion as to the other court previously possessing the like power, will only have the effect of constituting the former a court of concurrent jurisdiction with the latter, and will not destroy the like jurisdiction existing in the latter. Rev. Stats., arts. 319, 4535; 22 Am. and Eng. Enc. of Law, 2 ed., 918, 933.

The district or circuit court of the United States has no jurisdiction to try and determine actions in favor of a person for any physical or mental pain or injury inflicted upon him by a railway company engaged in interstate traffic. Interstate Commerce Act, secs. 1-8.

Common carriers engaged in the transportation of passengers or property by railroad, under a common control, management or arrangement for a continuous carriage or shipment from one State or Territory of the United States or the District of Columbia to any other State or Territory of the United States, are subject to the act of Congress regulating commerce between the States and Territories of the United States. Act to Regulate Commerce, Rev. Stats., U. S. Supp., 529, sec. 1; Houston D. N. Co. v. Insurance Co. of N. A., 89 Texas, 6; State v. International & G. N. Ry. Co., 71 S. W. Rep., 994; 4 Elliott on Railroads, art. 1763.

The validity of section 3 of interstate commerce act does not depend upon the penalty attached to section 10 to give it force and effect. The act contains provisions for it to be enforced by civil actions. The penalty is only cumulative. Secs. 6, 8, 9, 16, Interstate Com. Law, and sec. 10 of Act of March 2, 1899, pp. 529, 684, Supplement to Rev. Stats. of U. S.; Kentucky & I. Bridge Co. v. Louisville & N. Ry. Co., 37 Fed. Rep., 567; New York & N. Ry. Co. v. New York & N. E. Ry. Co., 50 Fed. Rep., 869.

A railway subject to the interstate commerce act has no right to establish local rules discriminating between its passengers or freight in running its trains or stopping its trains to receive or discharge such passengers or freight. Supplement to Rev. Stats., U. S., secs. 1, 3, p. 529; Cincinnati N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S., 184.

A railroad carrying interstate passengers is subject to the act of Congress until the passengers are actually delivered at their destination. Fielder v. Missouri K. & T. Ry. Co., 42 S. W. Rep., 363; Missouri K. & T. Ry. Co. v. Fooks, 40 S. W. Rep., 858.

Appellant, operating its lines in this State by virtue of its charter, granted by the Legislature and under the laws of the State, was required

to receive from its connecting line through the Indian Territory at the State line all passengers coming to it from its connecting line and transport the same to their destination, without any discrimination in favor of or against the line from which such passengers were received, and appellant had no right or authority to adopt any rule or regulation on the subject in violation of the law of this state. Rev. Stats., art. 4535; Eddy v. Rider, 79 Texas, 53.

WILLIAMS, ASSOCIATE JUSTICE.—The defendant in error, plaintiff below, purchased a ticket from plaintiff in error at Berwyn, a station on its road in the Indian Territory, entitling him to passage over the road from that point, by way of Cleburne, to Venus, Texas, another station on the same road. In order to reach Venus it was necessary for plaintiff, when he arrived at Cleburne, to leave the train on which he traveled from Berwyn, and to take another train from Cleburne, going over defendant's Dallas branch, to Venus. Three passenger trains daily were run by Venus over the Dallas branch. The first to leave Cleburne early in the morning was run on very fast schedule, for the benefit of through passengers, carrying through sleepers, mail and express matter from Galveston to St. Louis, and, in order that it might make the requisite time was scheduled to pass a number of stations at small places, including Venus, without stopping. By such regulation, however, this train was allowed to and did stop at these stations when necessary to put off passengers arriving there upon coupon tickets from other carriers connecting with defendant's road, and to take on passengers whose destinations were points beyond defendant's line. With these exceptions, this train, according to its schedule, passed these stations without stopping. The other two trains stopped habitually at Venus, and there is no evidence that they do not furnish reasonable facilities for all travel. The plaintiff arrived at Cleburne at 11 o'clock at night and remained there until the following morning, when he entered the first of the trains just mentioned. When the train reached Alvarado, the station nearest Venus at which it was scheduled to stop, the conductor, according to plaintiff's contention, put him off, for the reason that he (the conductor) was not authorized to stop at Venus for the purpose of discharging plaintiff; and such action was the cause of this suit.

The District Court in effect charged the jury, as matter of law, that plaintiff was entitled to be carried to Venus upon his ticket and to have the train stopped there to let him get off, and was entitled to recover if he was ejected from the train at Alvarado. The plaintiff recovered verdict and judgment for $1000, and, upon appeal by the defendant, the Court of Civil Appeals, after requiring a remittitur of damages deemed excessive, rendered a judgment for plaintiff for $100.

It is settled beyond controversy that, in the absence of contract or statute limiting their rights in this particular, railroad companies are not bound to stop all their trains at every station, but are required to stop at each station a sufficient number of trains to afford reasonable accom-

modations for the travel to and from it. Having done this they are at liberty to run other trains, for other purposes, without incurring the duty of stopping at every station. Such regulations of their schedules are uniformly held to be reasonable and to afford no cause of complaint to a passenger who gets upon a train which does not stop at his destination, when the servants of the company refuse to disobey their orders and stop at a place at which the particular train is not scheduled to stop. On the contrary, the passenger, with means at his command of ascertaining before he enters a train which one will deliver him at his destination, must avail himself of his opportunities and enter the right conveyance. Hassell v. International & G. N. Ry. Co., 62 Texas, 256; Beauchamp v. International & G. N. Ry. Co., 56 Texas, 239; 6 Cyc. of Law and Proc., pp. 556-558, and cases cited; 1 Felton, Carr. of Passengers, secs. 303-307, and cases cited.

In several of the cases cited trains from which plaintiffs were ejected were scheduled and managed like the one in this case and the same difference made between through and local traffic. That such is the law, in the absence of statutory regulations, was recognized by the courts below, their action being based on the opinion that this case is controlled by section 3 of the act of Congress regulating interstate commerce, which is as follows:

"Sec. 3. (Undue preferences prohibited—Equal facilities except in terminals, to connecting lines.)—That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business." 3 Fed. Stats., sec. 3, p. 816.

The Court of Civil Appeals held that the regulation which allowed passengers coming to the defendant's line from other roads to get off at all stations, while denying the same privilege to those traveling entirely on its own lines, gave to the former an "undue and unreasonable preference or advantage" and subjected the latter to an "undue or unreasonable prejudice or disadvantage," and denied to the latter "reasonable, proper and equal facilities," for which the plaintiff, being one

of the latter class, could maintain his action. This court granted this writ of error upon the opinion that, in view of the established doctrine that such regulations of their trains by railroad companies were reasonable, the regulation in question ought not to be regarded as having the legal effect thus ascribed to it, in the absence of further evidence than appears in this record. Before this question is reached, however, another arises, and upon further consideration we have concluded that such right of action as the act of Congress gives for its violation is not enforcible in the courts of this State.

From what has been said it is apparent that plaintiff's recovery, as had in the trial court, is founded on a supposed violation of the "interstate commerce act," and not upon the common law or any other law of this State, and the case necessarily involves the question whether or not the statute gives such a remedy as this for its violation.

The first paragraph of section 3 is taken substantially from an English act of 1854, which gave no action for damages, in terms, but provided for an injunction or interdict against violations of it. The courts of England held that the remedy given was exclusive and that, no action for damages lay for violation of the statute. Manchester, etc., Ry. Co. v. Denaby, etc., Colliery Co., 14 Q. B. D., 209; same case on appeal, 11 App. Cases, pp. 113-121; Rhymney Ry. Co. v. Rhymney Iron Co., 25 Q. B. D., 146. In the case first cited, in the House of Lords, the reason for this view is thus stated:

"If this section 2 had stood alone there might have been a very arguable question whether it did not impose a duty on the companies for the breach of which an action would have lain. But the sixth section seems to me to leave no doubt that it was the intention of the Legislature that, so far as section 2 imposed a duty beyond that imposed by the, then existing law, no action should lie, the only remedy to enforce performance of the new duty being by injunction or interdict. And this was the opinion of the Court of Session in Murray v. Glasgow & Southwestern Railway Company (1), and of both courts below in this case, and nothing that was said on the argument has led me to doubt that on this they were right."

The act of Congress by its eighth section does give an action for damages for a violation of its provisions, but its ninth section confers jurisdiction thereof upon the circuit and district courts alone, prescribing some of the procedure and rules of evidence, and puts the party complaining to his election between that remedy and the proceeding before the Interstate Commerce Commission, also provided for by the act, and restricts him to the remedy chosen. It would seem to follow necessarily that the only tribunals empowered to inquire and decide whether or not there has been an undue or unreasonable preference, advantage or prejudice are those selected by the statute and authorized to exercise the jurisdiction and apply the prescribed remedy, and so it is held, so far as we have found, by all the courts before which the question has arisen. Fitzgerald v. Fitzgerald, 41 Neb., 46; Copp v. Louisville, etc., Ry. Co.,

43 La. Ann., 511; Carlisle v. Missouri Pac. Ry. Co., 168 Mo., 652; Swift v. Philadelphia, etc., Ry. Co., 58 Fed. Rep., 858; Van Patten v. Chicago, etc., Ry. Co., 74 Fed.. Rep., 858; Edmunds v. Illinois Cent. Ry. Co., 80 Fed. Rep., 79. In the Louisiana case cited it is said:

"The general rule is that where a particular remedy is provided by law, such remedy must be sought to the exclusion of all others, in the cases contemplated by the statute; otherwise a person claiming injury under the act of Congress, instead of being compelled to elect which one of the two methods of procedure provided by the act he will adopt, will be afforded a third alternative not contemplated or provided for by the said act, and this, in violation of its express terms whereby he is limited to a choice between two remedies. * * * In the instant case the right asserted by the plaintiff is claimed under an act of Congress which specifies the remedy for its enforcement. This circumstance suffices to evidence that Congress saw fit to give the Federal courts exclusive jurisdiction. The motive which induced such legislation may have been, and no doubt is, to create one entire and one complete system, and provide for the necessary uniform machinery to make it effective on. an important and vital subject of national interest." See also Parsons v. Chicago & N. W. Ry. Co., 167 U. S., 455.

In prohibiting undue and unreasonable preferences, advantages, etc., the Congress, exercising exclusive power over the subject, chose the tribunals which are to determine when these things exist, and prescribed the remedies which they are to apply; and, as both the right of action and remedy originate with the statute, those given by it ought to be held upon well established principles of construction to be the only ones existing for .mere violation of the statute.

We are of the opinion that the decisions holding that this jurisdiction is vested exclusively in the Interstate Commerce Commission and in the courts of the United States are correct, and that therefore this action can not be maintained as for a violation of the act of Congress.

The judgment must be reversed for error in the charge of the trial court, but as there were allegations and proof tending to show a cause of action upon a different theory, viz., that when the ticket was purchased by plaintiff there was an express agreement between him and the defendant's agent that he might travel from Cleburne to Venus upon the train which he took, and be put off there, which ground of recovery was not submitted to the jury, the cause will be remanded for another trial. See authorities first cited.

*Reversed and remanded.*