## Abilene Cotton Oil Company v. Texas & Pacific Railway Company.

### Decided February 25, 1905.

**1.—Interstate Shipment—Railroads—Common Law—Unreasonable Charge.**

In a state where the common law prevails, a recovery may be had in a State Court against a railroad company for unreasonable freight charges exacted, although the shipment involved was an interstate one.

**2.—Same—Interstate Commerce Act—Federal Jurisdiction.**

While a suit to enforce a right given by the Interstate Commerce Act would have to be brought in a Federal Court, that Act does not impair or abridge either the right or the remedies theretofore existing, one of which was the right to have redressed in a proper court the wrong of an unjust exaction on the part of a common carrier.

Appeal from the District Court of Tayler. Tried below before Hon. J. H. Calhoun.

*Hardwicke & Hardwicke,* for appellant.—1. The court erred in holding that it was without jurisdiction to declare the 67 cent rate illegal, on the ground that the interstate commerce law applied. Brown on Jurisdiction, sec. 50; Rea v. Hayden, 3 Mass., 24; Lawrence v. Smith, 5 Mass., 362.

2. The common law liability of common carriers engaged even in interstate commerce prohibited unreasonable rates, unjust rates and

discriminative rates, and a carrier violating these obligations could be held responsible in common law action in any court of general jurisdiction, and this being an action on the common law liability of defendant the trial court erred in its judgment. Houston & T. C. Ry. v. Rust, 58 Texas, 98; Western Un. Tel. Co.. v. Call Pub. Co., 181 U. S., 92, also 45 Law. Ed., 765; Missouri Pac. Ry. v. United States, 189 U. S., 274, dissenting opinion by Justice Brewer; Murray v. Chicago & N. W. Ry., 62 Fed. Rep., 24; Lowry v. Chicago, B. & Q. Co., 46 Fed. Rep., 83.

3. When a statute gives a new remedy and contains no negative express or implied, of the old remedy, the new one provided is cumulative, and the party may elect between the two. Interstate Commerce Act, sec. 22, p. 3171 of vol. 3, U. S. Compiled Statutes, 1901; Missouri Pac. Co. v. United States, 189 U. S., 273, also 47 Law Ed., 811 (dissenting opinion by Justice Brewer) ; 8 Am. and Eng. Ency. Law, 493.

*T. J. Freman* and *J. M. Wagstaff,* for appellee.—1. The proof in this case having shown that the rate charged by appellee was the rate established in compliance with the Interstate Commerce Act, the District Court did not have jurisdiction over the subject matter of the suit to declare this rate unreasonable and hence the court did not err in holding that it had no jurisdiction. Able v. Bloomfield, 6 Texas, 264; Snyder v. Wylie, 59 Texas, 448; Watson v. Baker, 67 Texas, 50; Curtis v. Ford, 78 Texas, 269.

CONNER, CHIEF JUSTICE.—Adopting the construction of the pleadings evidently given them in the briefs, and treating it as presented, the case, briefly stated, is an action by appellant for damages for a violation of an alleged common law right, in that appellee demanded and coercively collected from appellant, freight charges in excess of a reasonable compensation for the transportation of a number of carloads of cotton seed from the town of Cottonport, and other designated towns in the State of Louisiana, to the city of Abilene, in the State of Texas. It is averred that the rate actually demanded and received by appellee was 67 cents for each one hundred pounds of cotton seed transported, which rate is alleged to have been unreasonable, unjust and discriminative; that a reasonable charge and compensation for the service performed would have been the sum of the local rates, as established by appellee, from the several towns in Louisiana named in the petition to the town of Alexandria, also in Louisiana, and from said Alexandria to said city of Abilene. The difference between the reasonable and unreasonable charges, as so stated, approximates 35 cents per hundred pounds of the shipments in question, and aggregates the sum of $1,951.83, which appellant seeks to recover.

Appellee, in addition to certain exceptions which appear to have been waived by a failure to invoke action of the court thereon, pleaded the general denial, and specially to the effect that the shipment in question was an interstate one, and that the rate of 67 cents per hundred pounds charged was in accordance with the classification and schedule of rates theretofore duly filed in behalf of appellee with the Interstate Commerce Commission and published and posted as required

by the Act of Congress generally known as the Interstate Commerce Act.

A jury was waived and the trial court found as true, among other necessary things not necessary to here notice, the facts as alleged by the respective parties as hereinbefore generally stated, but concluded as a matter of law that the freight rate demanded and received by appellee was the only lawful rate it could have demanded and received because of the fact that it was the rate fixed on the commodity in question, between the named points, in the classification and lists of freight rates that had theretofore been filed by appellee with the Interstate Commerce Commission and promulgated as alleged by appellee in its answer. Judgment was accordingly rendered for appellee, and hence this appeal.

We have stated the averments and facts very briefly, but we think enough has been stated to render it apparent that a very interesting and important question has been presented. That appellee is a common carrier for hire; that the points named are situated on its line of railway, as alleged; that cotton seed in quantity as alleged was transported as charged; and that a freight rate of 67 cents per hundred pounds was coercively demanded and received by appellee, are facts undisputed. Nor has appellee by any cross assignment attacked the court's findings of fact to the effect that the rate charged was and is inherently unreasonable, unjust, and discriminative to the extent claimed by appellant. So that we are relieved from a consideration of the difficulties discussed in some of the cases in ascertaining the fact and therefore now have squarely before us the question whether, in a State Court, a shipper in cases of interstate carriage can by the principles of the common law be accorded relief from unjust and unreasonable freight rates exacted from him, or shall relief in such cases be denied merely because such unreasonable rate has been filed and promulgated by the carrier under the Interstate Commerce Act?

In undertaking to dispose of the questions presented it may not be inappropriate to premise the statement that an unrestrained right, if any, to impose freight rates by common carriers engaged in interstate commerce would include the right in effect to altogether deny to many citizens of the United States and territories the acquisition and use of many articles of commerce that in the development of the present age must be held to be necessaries. In some of the States and Territories there are comparatively no manufactories. In others no mines of coal, or of certain kinds of ore, or useful metals. In yet others an absence of certain agricultural or pastoral products, and the reciprocal exchange of these and other necessaries not only answers the actual necessities of the citizens in all parts of the American Union, but also seems essential to the proper development and power of our great nation. To deny such exchange is to paralyze industries in many mining, manufacturing and commercial centers and to unreasonably retard individual and national life. There seems, therefore, a necessity for some law that may be applied in some court to prevent unreasonable or prohibitive freight charges by those necessary factors of modern life—common carriers.

Pretermitting for the moment the question of the proper court in which it may be applied, we think the common law provides a remedy.

In this State it is declared by express legislative enactment that the common law of England (so far as it is not inconsistent with the Constitution and laws of this State) shall, together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature. (Rev. Stats., art. 3558.)

Mr. Hutchinson, in his work on carriers, 2d edition, section 447, in discussing the amount of compensation to be allowed the common carrier for the transportation of goods in cases where the rate has not been fixed by statute, by established usage, nor by agreement of the parties, says that, "The carrier will be entitled to demand and receive a reasonable compensation." And that, "Further than that his charges shall be reasonable, the common law seems to have put no restriction upon the carrier in respect to his demand for compensation." The Supreme Court of the United States, in Interstate Commerce Commission v. N. O. & T. P. Ry. Co., 167 U. S., 502, 42 Law Ed., 254, in speaking of freight charges by common carriers, makes use of the following terms: "For more than a hundred years it has been the affirmative duty of the courts to execute and enforce the common law requirements that all charges shall be reasonable and just." And in the case of Western Union Telegraph Company v. Call Publishing Company, 181 U. S., L. Ed., bk. 45, page 765, the same great court, in speaking of the common law, and in answering the contention that there was no common law that could be applied in the case before the court, say: "Can it be that the great multitude of interstate commercial transactions are freed from the burdens created by the common law, as so defined, and are subject to no rule except that to be found in the statutes of Congress? We are clearly of opinion that this can not be so, and that the principles of common law are operative upon all interstate commercial transactions, except so far as they are modified by congressional enactment." See, also, Tift v. Southern Railway Company, 123 Fed. Rep., 790. The foregoing citations, it seems to us, authorize the conclusion that the appellee in demanding and receiving the excessive freight rate, as found by the court, violated a common law right of the appellant in this case.

There yet remains for determination, however, the right, if any, of a State Court to apply the principles of the common law, and the effect of the Act of Congress invoked by appellee. In the case of Swift v. Philadelphia & R. Ry. Co., 58 Fed. Rep., 858, it is held, in an opinion of the Circuit Court for the Northern District of Illinois, by Grosscup, district judge, to the effect, (1) that the common law rule forbidding common carriers from exacting unreasonable charge does not apply to interstate commerce, even when the contract of carriage is made in a State where that rule prevails, for the reason that such commerce is governed solely by the law of the United States, and the United States have never adopted the common law; and (2) that the right to question the reasonableness of an interstate commerce rate is a matter of primary, as well as of exclusive, jurisdiction in the Federal Courts.

In a later case, however, the case of Murray v. Chicago & N. W. Ry. Co., 62 Fed. Rep., 24, the Circuit Court for the Northern District of Iowa, in an opinion by Shiras, judge, differs from the opinion in the Swift case in both particulars. The latter court, in the more recent case of Van Patten v. Railway Co., 74 Fed. Rep., 981, holds that actions for damages brought under the provisions of the interstate commerce act are within the exclusive jurisdiction of the Federal Courts. Other cases of like tenor might be cited. But in the case of the Western Union Telegraph Company v. Call Publishing Company, supra, the Supreme Court of the United States, not only recognized the common law as providing a remedy against unreasonable rates in interstate commerce cases, but also, in the absence of congressional restriction, the right of a State Court to apply the remedy. In that case, as appears from its report, suit was instituted in a State Court in the State of Nebraska by the Call Publishing Company for the recovery of unjust and discriminative charges made by the Western Union Telegraph Company for the transmission over its lines of the associated press dispatches. The plaintiff in the suit recovered judgment which was affirmed by the Supreme Court of Nebraska. On writ of error to the Supreme Court of the United States the contention of the telegraph company is thus stated: "The contention of the telegraph company is substantially that the services which it rendered to the publishing company were a matter of interstate commerce; that Congress has a sole jurisdiction over such matters, and can alone prescribe rules and regulations therefor; that it had not at the time these services were rendered prescribed any regulations concerning them; that there is no national common law, and that whatever may be the statute or common law of Nebraska is wholly immaterial; and that therefore, there being no controlling statute or common law, the State Court erred in holding the telegraph company liable for any discrimination in its charges between the plaintiff and the Journal Company. In the brief of counsel it is said: 'The contention was consistently and continuously made upon the trial by the telegraph company, that as to the State law it could not apply for the reasons already given, and that, in the absence of a statute by Congress declaring a rule as to interstate traffic by the telegraph company, such as was appealed to by the publishing company, there was no law upon the subject.'"

These contentions were overruled, notwithstanding the fact that the service of the telegraph company was treated as a subject of interstate commerce, and the judgments of the Nebraska courts affirmed. This case would seem to be undoubtedly authority for maintaining the right of the State Courts, in the absence of congressional action, to dispose of the issue of an inherently unreasonable rate under the common law." And this right has not, in our judgment, been taken away by the Interstate Commerce Act applying to the carriers therein specified. It is true that the Act (U. S. Compiled Statutes, vol. 3, page 3154), in its first and second sections declares that all charges for any service rendered or to be rendered by carriers subject to the provisions of the Act in the transportation of passengers or property shall be reasonable and just, and that unjust and unreasonable charges for such services, and discriminations between persons and places are

unlawful.  In the eighth section, any person injured in consequence of a violation of any one or more of the provisions of the Act is given the right to recover the damages sustained, "together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery," and in the ninth section, jurisdiction is given the District and Circuit Courts of the United States of competent jurisdiction to try suits for the recovery of the damages and attorney's fee provided for in the eighth section.  But in the twenty-second section of the Act we find this language:  "  .  .  .  and nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."

It is difficult to imagine terms more clearly evincing the purpose of Congress to leave the people of the United States in the full and undisturbed possession of all remedies theretofore existing for injuries such as are involved in this case.  The term "remedies," as here used, ought not, we think, be used in any restricted sense.  The Standard Dictionary defines remedy as, among other things, "A legal mode for enforcing a right or redressing or preventing a wrong."  Anderson's Dictionary of the Law defines the term as, "A mode prescribed by law to enforce a duty or redress a wrong."  These definitions seem certainly broad enough to include the necessary courts or tribunals.  How can there be a remedy for a wrong without a tribunal having power to determine the fact and accord and enforce relief?  It may well be held, as was properly done in some or all of the cases cited, that for a recovery for the invasion of a right created by the Act, and not theretofore existing, or for the recovery of the "damages and attorney's fee" provided for in the Act, resort must be had to the particular federal tribunal herein specified.  But that is not this case.  Appellant alleges facts showing a common law right of action—one existing at the time of and prior to the passage of the Interstate Commerce Act—and makes no prayer for "damages and attorney's fee."  On the contrary, as we construe this case, it is one where a common carrier, in violation of the common law, has charged and collected from a shipper a freight rate inherently exorbitant and unreasonable.  So treated, we think the court below had the power to try this suit.

As opposed to this view appellee cites, together with others that we think easily distinguishable, the cases of Gulf, Colorado & Santa Fe Railway Company v. Moore, 98 Texas, 302, 83 S. W. Rep., 362, and Van Patten v. Railway Co., 81 Fed. Rep., 545.  If by proper construction the Van Patten case is adverse to our conclusion, we are not inclined to follow it, and we think it clear that the case cited from our own Supreme Court is not in point.  In the case of Railway Company v. Moore, damages were sought by an interstate passenger because of a refusal of the railway company to stop one of its trains at a station in Texas, for which his ticket called.  The facts showed that the train was a through one, which in accord with rules of the railway company theretofore prescribed, did not stop at the station named, and a sufficient number of later trains for the traveling public were operated and regularly stopped thereat.  Such reasonable regulations are not forbidden by the common law, but on the contrary, have often been up-

held by the courts. Railway Co. v. People of Illinois, 177 U. S., 514, L. Ed., bk. 44, 868. It seems evident therefore from the facts stated that the judgment in the passenger's favor could only be upheld by an application of the rule against discrimination provided in the Interstate Commerce Act, which the court held was enforceable alone by the Federal Courts, but was careful to say: "From what has been said, it is apparent that plaintiff's recovery, as had in the trial court, is founded on a supposed violation of the 'Interstate Commerce Act,' and not upon the common law or any other law of this State, and the case necessarily involves the question whether or not the statute gives such a remedy as this for its violation." (11 Texas Court Reporter, 425.) It is also worthy of notice that the case was reversed rather than dismissed on the ground that "there were allegations and proof tending to show a cause of action upon a different theory, viz: that when the ticket was purchased by plaintiff (in the Indian Territory) there was an express agreement between him and the defendant's agent that he might travel" on the train upon which he took passage, and stop at the station named.

We will add in concluding, that while the Act of Congress neither provides within itself any schedule or rates for the transportation of interstate commerce, if indeed it could have done so, nor gives the commission created by the Act such power, it is nevertheless remedial in character, entitled to a liberal construction in the interest of the multitudes of shippers in the country, and we feel unwilling to construe the Act as evincing a purpose on the part of Congress to in any manner or degree impair or abridge either the right or the remedies, inadequate though they may be, theretofore existing, one of which undoubtedly was in a proper court to redress the wrong of an unjust exaction. We think a contrary purpose is most plainly expressed in the quotation made from the twenty-second section.

It must follow that upon the facts found the judgment should have been for appellant. We therefore adopt the trial court's findings of fact, and, applying thereto the principles of law we have deduced, reverse the judgment and here render judgment in appellant's favor for the said sum of $1,951.83, excessive freights charged, together with interest thereon at the legal rate from the date of its payment to appellee, to wit, October 7, 1901, and all costs of suit.

*Reversed and rendered.*

Writ of error refused.