CHICAGO, R. I. & G. RY. CO. v. CARROLL.

(Court of Civil Appeals of Texas. Amarillo. Nov. 9, 1912. Rehearing Denied Dec. 14, 1912.)

1. CARRIERS (§ 373*)—EJECTION OF PASSENGER—CONNECTING CARRIERS.

A railroad company selling a ticket to a passenger for passage over its own line and that of a connecting carrier is not liable for the ejection of the passenger by the connecting carrier on the ground that the ticket was not good on the particular train taken by the passenger, where the agent selling the ticket had no knowledge of a rule of the connecting

carrier limiting the train in question to passengers holding a particular form of ticket.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1461; Dec. Dig. § 373.*]

2. CARRIERS (§ 381*)—CARRIAGE OF PASSENGERS—ACTIONS FOR BREACH.

In an action against two railroad companies for damages for ejecting plaintiff's wife from a certain train, evidence *held* to show that the employés of the first railroad company, who sold plaintiff a ticket, had no knowledge of the second railroad company's rule that it was *not* good on that train, and hence to authorize peremptory instruction for that company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1482; Dec. Dig. § 381.*]

3. CARRIERS (§ 383*)—INSTRUCTIONS—PROVINCE OF COURT.

In an action against a railroad company for damages for ejecting plaintiff's wife from a certain train, where the ticket upon which she attempted to ride, as well as the rules of the railroad company which sold the ticket, were in evidence, it was for the court to declare the legal effect of such written testimony, and whether she was entitled to ride on that given train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1492–1496; Dec. Dig. § 383.*]

4. CARRIERS (§ 270*)—ACTS OF AGENT—BINDING EFFECT ON PRINCIPAL.

As a principal is bound by the act and contract of his agent made within the scope of his authority, one railroad company which allowed another company to sell tickets over its line is bound to honor a ticket sold by the first company over its line, where the purchaser had no notice of the limitation on the first company's authority.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1064–1066; Dec. Dig. § 270.*]

5. CARRIERS (§ 382*)—MEASURE OF DAMAGES—PERSONAL INJURIES.

In an action by a husband for damages for the wrongful ejecting of his wife from defendant's train, where it appeared that she was alone, save for three small children, and was forced to alight from the train at an early hour in a desolate spot, and was caused inconvenience, humiliation, and annoyance, a verdict of $1,500 was not so large as to indicate passion and prejudice.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1478, 1483–1491; Dec. Dig. § 382.*]

Appeal from District Court, Donley County; Jas. N. Browning, Judge.

Action by T. W. Carroll against the Chicago, Rock Island & Gulf Railway Company and another. From a judgment for plaintiff, defendant named appeals. Affirmed.

Gustavus, Bowman & Jackson, of Amarillo, N. H. Lassiter and Robt. Harrison, both of Ft. Worth, for appellant. A. T. Cole and H. B. White, both of Clarendon, and D. W. Odell, of Ft. Worth, for appellee.

PRESLER, J. This suit was brought by T. W. Carroll against the Ft. Worth & Denver City Railway Company and the Chicago, Rock Island & Gulf Railway Company to recover damages, alleging in substance that appellee on January 23, 1910, called on the agent of the Ft. Worth & Denver City Railway Company at Clarendon, and requested a first-class ticket for his wife from Clarendon to San Francisco, by way of the Ft. Worth & Denver City Railway Company to Dalhart, and thence by way of the Chicago, Rock Island & Gulf Railway Company to the city of El Paso; that he stated to the agent that he wanted his wife to travel from Dalhart on the Rock Island train known as the "Golden State Limited," and wished the said transportation for use on that train, and that said agent led appellee to believe and informed him that the ticket was good for passage on that train; that appellee then arranged for Pullman car reservation from Dalhart to San Francisco on this Golden State Limited train, due to leave Dalhart at 3:20 a. m., January 24th, and on January 23d he and his wife and three small children boarded the Ft. Worth & Denver train at Clarendon, and proceeded to Dalhart, where he purchased the Pullman accommodations already reserved to San Francisco, and that about 3:20 a. m. he placed his wife and children on the Pullman car of the Golden State Limited, and left them; that a few minutes later the conductor of the train notified his wife that her ticket was not good for passage on that train, and that she would have to leave it at the town of Tucumcari, and required her to do so at about 5:30 in the morning, where she was detained until the arrival of the next train, which caused her great inconvenience and worry and additional expense in the sum of $20, over her protest that she had a first-class ticket, and was entitled to ride in that train to her journey's end, and notwithstanding she offered to pay him in cash the full amount of the fare to the city of El Paso, and that she was wrongfully compelled by said conductor to leave said car and train at the town of Tucumcari with her children; that said conductor was the agent and servant of said defendant, the Chicago, Rock Island & Gulf Railway Company, and by said company placed in full charge of said train; that appellee's said wife was not escorted by any gentleman; that she was not experienced in traveling alone, and that by nature she is and was nervous and was unacquainted in the town of Tucumcari; that she was greatly frightened for herself and in behalf of her children by being told that she would have to get off of said train, and after refusal of the conductor to accept cash fare, at being put off the train in a strange place and in the nighttime, it being 5:30 o'clock of the morning; that she is a woman of refinement, and that she suffered great humiliation and shame and mental anguish by being thus wrongfully ejected from said train, and was greatly alarmed, humiliated, and distressed, all of which acts by said conductor were alleged to have occurred while appellee's said wife was on said train on the said Chicago, Rock Island & Gulf Railway Company, and that said statements to her and the said re-

fusal of the tender made by her occurred while said train was being operated on said line by the agents, servants, and employés of appellant, and that the same train in every particular, together with same employés and operatives, continued to operate said train and remain in full charge, control, and direction thereof until plaintiff was finally ejected therefrom by being told and directed to depart from and leave the same at Tucumcari; that she was a frail, delicate woman, accompanied by three babies, and wholly unable to resist or refrain from doing as she was directed to do, and believed that the commands of said conductor and employés would be enforced by force, if necessary, to secure their execution, and that all of said acts complained of were caused to be done and put in motion by this appellant, the said Chicago, Rock Island & Gulf Railway Company, its conductors, agents, servants, and employés, and that the same took place on the train on which the appellee's said wife was a passenger, as she had a right to be by virtue of and as the result of the contract alleged to have been made for her transportation on said train; that there was no other available passenger train passing over said railroad in the direction of her journey for about 12 hours; that it became necessary for appellee's wife to seek a hotel; that the morning was cold and dark, and the town of Tucumcari was unlighted, and that appellee's said wife suffered great physical inconvenience, worry, and distress of mind before she reached a hotel and procured rooms; that she was then compelled to board a local train and travel in a day coach without the facilities of travel afforded by Pullman cars, as far as El Paso, and that she was delayed in her journey 48 hours; that she traveled on said Rock Island trains from Tucumcari to El Paso on her said ticket purchased by appellee at Clarendon; that said agent at Clarendon of the Ft. Worth & Denver City Railway Company represented himself to be the agent of the appellant, Chicago, Rock Island & Gulf Company, for the purpose of selling said ticket over its line, and did sell the same to appellee, and that said agent was the agent of appellant for the purpose of selling tickets, and had the right and authority so to do, and that said Ft. Worth & Denver City Railway Company is the authorized agent of appellant for the sale of tickets over its lines and responsible for any breach of contract by said appellant and its connecting lines; that in the sale of said ticket the said appellant and the said Rock Island Company were the agents of the Ft. Worth & Denver City Railway Company, and each was the agent of the other, and prayed for damages in the sum of $2,520 because of the premises.

The Ft. Worth & Denver City Railway Company answered that plaintiff applied to its agent for tourist or excursion rates to San Francisco, and was advised by its agent that a ticket known as a "summer excursion" ticket could be had, which ticket entitled the owner to first-class passage en route, and he sold such a ticket to the appellee; that this ticket was the usual and ordinary ticket, entitling the holder to first-class transportation, and was the only class or character of ticket that its codefendant had authorized the Ft. Worth & Denver City Company to sell over its line of road, except a through passage ticket which did not entitle the holder to return transportation; that if the appellant the Chicago, Rock Island & Gulf Railway Company, or its connecting carriers, had made or formulated any special rule or regulation regarding transportation on certain trains or which excluded the holder of the ticket sold appellee from riding on the train known as the "Golden State Limited," no information of such rule or regulation had been given to the Ft. Worth & Denver City Railway Company, and that it was in no wise responsible for the damages claimed.

The Chicago, Rock Island & Gulf Railway Company, appellants herein, answered by exception that the injury complained of appeared to have taken place within the territory of New Mexico, and upon a line of railway owned and operated by the Chicago, Rock Island & Pacific Railway Company, and not in any wise by the appellant, and denied any consolidation or connection with the Chicago, Rock Island & Pacific Railway Company, except that they were connecting carriers, and specially answered that the ticket sold had printed on it in bold type, the following: "Special excursion to Pacific Coast and reduced rate ticket, good subject to conditions printed below, for one first-class passage to destination," and that it contained, among other provisions, the following: "This ticket is subject to the rules and regulations of each line over which it reads and may be exchanged in whole or in part for a ticket or check in conformity therewith," and another as follows: "In consideration of the reduced rate at which this ticket is sold, I, the original purchaser, hereby agree to accept and be governed by all of the conditions of this contract;" that the Golden State Limited was a limited train, operated out of Chicago to the Pacific Coast, via a number of lines of railway which are connecting carriers, it being handled by this appellant over its line of railway from the state line between Texas and Oklahoma, at Texhoma, to the state line between Texas and New Mexico, at Bravo, and that it carried only special equipment, and was operated exclusively for the commodious and rapid transportation of through passengers; that the different lines operating it had prescribed and had in force at the time of the occurrence alleged in appellee's petition reasonable regulations covering the operation

of this train and the character of the tickets that would be honored on it, and that among those regulations was this rule: "The following class of transportation will not be honored on this train: Passes of all kinds (except division superintendents on their respective divisions), tickets of any class endorsed, punched or printed 'Special rate,' 'Special,' 'Employe' (except as allowed in Rule 7), 'Charity,' 'Advertising,' 'D. V. S.' or 'Clergy' (except as authorized in Rule 7), 'Homeseekers' Tickets,' 'Emigrant Ticket,' 'Drovers' Tickets,' 'Stock Contracts,' 'Editorial Mileage,' and all tickets endorsed 'Not good on Golden State Limited,' or 'Not good on limited trains,' second-class tickets (except in Tourist Sleeper as permitted by Rule 7)." Appellant further pleaded that the ticket held by appellee's wife was one for special excursion, and a reduced rate ticket, and could not on account of the above regulation and rule be honored on this train. It was averred that the defendant operated over its line of railway sufficient passenger trains other than the Golden State Limited for the accommodation of passengers, there being in service at that time two local trains per day each way, and that the rules and regulations applying to the Golden State Limited train were just and reasonable.

The allegations in appellee's petition to the effect that the line of railway extending from the Texas state line to Tucumcari was a mere continuation of, and was virtually the same line of railway as that owned and operated by the appellant in Texas, were specially denied, and it was specially averred that the defendant was the owner of a line of railway running from Texhoma to Bravo, within the state of Texas, and that the line from Bravo to Tucumcari in New Mexico was owned and operated by the Chicago, Rock Island & El Paso Railway Company which was incorporated under the laws of the territory of New Mexico, and this appellant was only a connecting carrier with that company, and was not a partner with it or with any other railway company as to the transportation of the appellee's wife; and it was specially denied that the conductor in charge of the train after it left this appellant's line of road was an employé of this appellant, but it was averred, on the contrary, that he was at that time an employé of the next connecting line, and acting for it, and not for this defendant. It was further pleaded that if it should be found that the Ft. Worth & Denver City Railway Company was the agent of the Chicago, Rock Island & Gulf Railway Company in selling the ticket, and that there was fault or negligence in selling such a ticket in the way it was sold, and without giving the plaintiff proper advice as to whether it would be good on the Golden State Limited, this was the fault or negligence of the Ft. Worth & Denver City Railway Company, and this appellant was entitled to a judgment over against it for whatever, if any, amount was recovered by the appellee against this appellant.

On trial before a jury a verdict was had in favor of appellee against the Chicago, Rock Island & Gulf Railway Company for the sum of $1,500 and also in favor of the Ft. Worth & Denver Company, the latter under peremptory instruction from the court, on which verdict judgment was accordingly entered, and appellant, the Chicago, Rock Island & Gulf Railway Company, has duly appealed to this court, and asks to have said judgment reversed because of errors assigned.

Appellant's first four assignments complain of the admission of certain evidence as prejudicial to appellant and improperly admitted. Upon due consideration of the same we are of the opinion that no reversible error is presented under said assignments, and the same are disallowed.

[1, 2] Under its fifth assignment, appellant complains of the action of the court in giving peremptory instruction to the jury to return a verdict for the defendant, the Ft. Worth & Denver City Railway Company, contending that it was error on the part of the court to so instruct a verdict because this appellant contended and proved that the ticket was not good for passage on the Golden State Limited, and that, if a verdict could be found against appellant at all, it could be only on the theory that the Ft. Worth & Denver City Company was its agent, and was negligent in issuing the ticket in question and representing it to be good for passage on the Golden State Limited, and that, in such event, appellant would have a right of recovery over against the Ft. Worth & Denver City Company. We are of the opinion that the instruction was properly given, it appearing from the undisputed evidence that appellant's said agent, the Ft. Worth & Denver Company, at the time of the sale of said ticket and the contract made with appellee, had no notice of any rule by appellant or any of its connecting carriers, restricting said ticket to any particular train, and it would in our opinion be unreasonable to hold the said agent, the Ft. Worth & Denver City Company, charged with notice of said private rules and regulations promulgated by and between appellant and its connecting carriers in the operation of their special trains, when no knowledge of the same had been conveyed to such agent. On the issue of the Ft. Worth & Denver Company's agency and its want of notice of the rules and restrictions applying to this particular train, W. H. Card, chief rate clerk of the passenger department for the Ft. Worth & Denver City Railway Company, testified as follows: "I reside in Ft. Worth, Texas, and am chief rate clerk of the passenger department for the Ft. Worth & Denver City Railway Company. I have been engaged in that department since 1886, a good part of

the time as rate clerk. The ticket submitted to me is known as an 'all year tourist ticket.' It is a first-class ticket. There was a tariff arrangement existing between the Denver and the Rock Island as well as all other roads for sale of tickets which is embraced in the joint tariff of all Texas lines. This tariff is printed and distributed to the agents, and has been in force for six years. I have here a printed copy of the tariff. It is filed with the Interstate Commerce Commission, is furnished to all agents, and constitutes an agreement between them for the sale of coupon tickets over connecting lines. We had no notice of any rule by the Rock Island Road restricting this ticket to any particular train. We have never been advised of any restriction. The passenger department of the Denver has received no notice of any restriction. If any notice had been given, it would have been to the passenger department. This is the department I represent. If this department had had any notice, I would certainly have known of it."

C. H. Wisdom, station agent for the said Ft. Worth & Denver City Railway Company at Clarendon, testified as follows: "I live at Clarendon, and am station agent for the Ft. Worth & Denver, and was last year. I remember the circumstance of selling Dr. Carroll a ticket for his wife to California. That was in January, 1910. The conversation with him in reference to the purchase of the ticket was that Dr. Carroll asked for a rate to California and return, and also for the time of the train, and when it left Clarendon and Dalhart, and when they arrived at Los Angeles and San Francisco. I told him the rate would be $87.25 for the round trip. I don't know that the name of the ticket was discussed, and I don't think he asked about the class of the ticket. The only rate we had was $87.25 which I got from the tariff. It was for the all-year tourist, and we had authority from the tariff to sell that ticket over the Rock Island. He said he wanted the ticket, and something was said about his wife going on a particular train. He said that he wanted her to take the Golden State Limited out of Dalhart, and I sold him the ticket, and he had no advice that it was not good on that train, and there was nothing in the tariff to show that it was not good. The Rock Island was a party to the tariff, and it shows routing over that line. No, sir; there was no class of tickets that I could sell at that time other than this ticket, except a straight rate ticket for the round trip. There was no summer rate ticket on sale at that time. I never had any notice of any rule or regulation restricting transportation over the Golden State Limited up to that time."

The witness W. H. Card also testified that: "The summer tourist rate goes into effect June 1st, and lasts until September 30th. There is a difference between summer tourist rate and the all-year rate. The all-year rate is a higher rate. The tariff shows that the amount charged for the ticket in this case was greater than for a summer tourist ticket. The contracts for an all-year tourist ticket and a summer tourist ticket read practically alike. The rate has nothing to do with the grade of the contract, both are first-class tickets—the all-year being more expensive on account of the limit." He further testified: "Well, there is some difference between the contracts. Possibly more clauses in the all-year contract than in the summer contract, but no difference as to how they shall be honored. Yes; I have here one of the forms for the all-year tourist tickets which we desire our agents to sell. The form used by the agent in this case was not that form, an A. Y. C. form. He used a summer tourist ticket and marked it 'all year tourist,' but the form practically had no bearing on the ticket. The all-year tourist form states that it is a first-class ticket without referring to any conditions whatever. I do not know that the all-year tourist form has any indorsement on it that it is a special or reduced rate. This is a Pacific Coast, nine months tourist ticket. It contains no statement that it is a special or reduced rate ticket more than the word 'tourist,' which would indicate that it was sold at a reduced rate; the word 'tourist' being the only thing indicating this."

It fully appears from the evidence that appellee applied to appellant's agent at Clarendon for a ticket affording his wife transportation from Clarendon to California over appellant's line of railway, and on a train known as the "Golden State Limited"; that said agent of appellant sold him the highest priced round-trip ticket over said route that he had, with the assurance that it would secure him transportation on the train desired; and that said agent did this without notice as to any rule or restriction in force prohibiting appellee's use and passage on said Golden State Limited, or any restriction as to what trains he should use at all, and it appears to us that appellant was in default and neglected its duty to its said agent, the Ft. Worth & Denver City Railway Company, in not informing it of the promulgation and enforcement of said rule, which appears to have been promulgated on January 2d, and the sale of the ticket in question made on January 23, 1910. Therefore, if it be conceded that the trouble resulting in appellee's wife being required to leave the train and subjected to the injuries complained of was caused by a mistake of said agent in selling appellee the wrong ticket, as stated above, it fully appears that said mistake was caused by appellant's negligence in not giving to its said agent, the Ft. Worth & Denver City Railway Company, due notice and necessary information to govern it in the sale of tickets over appellant's route and trains. We therefore conclude, as above indicated, that the assignment in question is without merit, and

that the trial court properly gave the peremptory instruction complained of.

[3, 4] Appellant, under its sixth assignment of error, contends that it was error for the court to instruct the jury that the ticket entitled the plaintiff's wife to travel on the Golden State Limited train, because this depended on whether or not the railway companies had in force a reasonable rule prohibiting passengers holding such a ticket from riding on that train, and that this was a question of fact, to be determined by the jury. The second paragraph of the court's charge thus objected to reads as follows: "The law makes it the duty and province of the court to construe, and inform the jury in its charge, the legal effect of the contract, rules, and any other written evidence bearing thereon, introduced as evidence in the case. I therefore charge you that the railroad ticket offered in evidence before you was such an one as entitled the plaintiff's wife to travel as a passenger over the Chicago, Rock Island & Gulf Railway Company's line and its connecting lines on the train known as the 'Golden State Limited' to the end of her journey as indicated by the ticket. Now, if you believe from a preponderance of the testimony that, while a passenger on said Chicago, Rock Island & Gulf Railway Company's line of road at the time alleged by plaintiff, the conductor in charge thereof informed plaintiff's wife that she could not ride thereon, and would be required to leave the same at Tucumcari, N. M., and by his words and acts knowingly and intentionally caused her to believe that she would be compelled to leave said train, and by such means did cause her to leave and abandon such train, and was damaged thereby, as alleged by plaintiff, you will find for the plaintiff against said Chicago, Rock Island & Gulf Railway Company, and assess the damages as hereinafter directed." We are of the opinion that there is no error in the charge complained of, that the law made it the duty of the court to construe and inform the jury in its charge as to the legal effect of the contract, rules, and other written evidence bearing thereon, introduced in evidence, and that the ticket offered, together with the evidence as to the facts attending its sale, warranted the instruction given by the court to the effect that the ticket entitled appellee's wife to travel as a passenger over the Chicago, Rock Island & Gulf Railway Company and its connecting lines on the train known as the Golden State Limited, to the end of her journey, as indicated by the ticket. It is a fundamental principle of the law of principal and agent that the principal is bound by the act and contract of the agent made within the scope of his apparent authority. In this case it appears from the uncontroverted testimony that the Ft. Worth & Denver City Railway Company was the agent of appellant for the sale of tickets for transportation over appellant's lines of railway,

151 S.W.—71

and as such agent sold appellee the ticket to pass appellee's wife over appellant's said lines of railway on what was known as the Golden State Limited train. It was the duty of the court to charge the jury as shown in the paragraph complained of. In the case of Gulf, Colorado & Santa Fé Ry. Co. v. Moore, 98 Tex. 302, 83 S. W. 362, 4 Ann. Cas. 770, the Supreme Court of this state held that: "When at the time plaintiff bought his ticket there was an express agreement between him and defendant's agent that he might travel to Venus on the train which he took, action will lie for his being put off before arriving at Venus on the ground that the train did not stop at that station." In that suit plaintiff alleged that at the time he bought the ticket from defendant's agent at Berwyn, Okl., for Venus, Tex., that the agent contracted with him to carry him on defendant's first train to Cleburne, Tex., and from Cleburne to Venus, on the first train of defendant after plaintiff reached Cleburne, and the evidence showed that plaintiff reached Cleburne on defendant's train and took passage on the first train that left Cleburne for Venus. Defendant's conductor put plaintiff off at Alvarado, a station between Cleburne and Venus. Defendant pleaded that the train was a through train, and did not stop at Venus, and that two accommodation trains ran from Cleburne to Dallas via Venus on defendant's line each day. In the case before us it may be conceded that had appellee known that appellant's agent, the Ft. Worth & Denver City Railway Company, had no authority to make the contract made with him for the transportation of his wife, over appellant's line of railway on the Golden State Limited train, that appellant and its connecting lines of railway would not have been bound by said contract, but it fully appears from the evidence that, when appellant's agent at Clarendon sold appellee the ticket, he had no knowledge that said agent was without authority to make such a contract. The assignments are therefore overruled. H. & T. C. Ry. Co. v. Hill, 63 Tex. 384, 51 Am. Rep. 642; G., C. & S. F. Ry. Co. v. Moore, 98 Tex. 302, 83 S. W. 362; 4 Ann. Cas. 770. Appellant, under a number of assignments, complains of the action of the court in refusing to give certain special charges requested by appellant. We are of the opinion that as said special charges either submitted instructions which were inconsistent with and contradictory of the instructions contained in paragraph 1 and 2 of the court's general charge, hereinbefore considered, or submitted incorrect propositions of law as applied to the facts in this case, that said special charges were correctly refused.

[5] The only question presented under appellant's remaining assignments that we deem necessary to be here discussed is the contention made under its nineteenth assignment, that the verdict rendered was excessive. In

view of the evidence of appellee's wife as to the delays, annoyance, and distress to which she was subjected by appellant, we do not think the amount of the verdict excessive. As stated by the Court of Civil Appeals in the case of Houston & T. C. Railway Co. v. Berling, 14 Tex. Civ. App. 544, 37 S. W. 1086: "That the verdict may be large may be conceded, but we are unable to say under decisions heretofore rendered and approved by this and the Supreme Court that the verdict is excessive. * * * Large discretion is confided the jury in fixing the amount of damages, and unless the amount be so great, considered in reference to the evidence, as to make it probable at least that the verdict was the result of passion, it should not be disturbed." It appears to us that compensation for the character of injuries complained of in this case, such as alarm, uneasiness of mind, and humiliation, growing out of the treatment to which appellee's wife was subjected and arising from the situation and conditions in which she was placed, fall more properly within the province of the jury than of this court, and, as stated in the opinion quoted from, unless we were afforded some evidence tending to show that the finding of the jury as to the amount awarded was the result of passion or prejudice, we do not feel warranted in disturbing said verdict, which in this case was rendered for $1,500.

Finding no reversible error assigned under either of appellant's assignments, we conclude that the same should be overruled and the judgment appealed from in all respects affirmed, and it is accordingly so ordered.