CITY OF HAMMOND *v.* SCHAPPI BUS LINE, INC.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 67. Argued October 25, 26, 1927.—Decided November 21, 1927.

1. In a suit in the federal courts to enjoin enforcement of a city ordinance, its validity under the Federal Constitution is not properly to be considered if it be found void under the State law; and questions involving the application of that law should be discussed and determined by the two courts below preliminary to their consideration here. P. 169.

2. Before novel and important questions of constitutional law in a suit in the lower federal courts are passed upon by this Court, the facts essential to their decision should be found by those courts upon adequate evidence; this Court will not attempt to find the facts from an inadequate record consisting of pleadings and affidavits used on an application for a temporary injunction. P. 171.

3. When a suit to enjoin enforcement of a city ordinance has gone no farther in the District Court than an order overruling an application for a preliminary injunction based on pleadings and affidavits, and reaches the Circuit Court of Appeals by appeal from that order, it is not ripe for final disposition by a decree of the latter court directing a permanent injunction. P. 172.

4. Under the circumstances, without costs to either party, the decree of the Circuit Court of Appeals directing a permanent injunction is modified by directing an injunction pending the suit, and by remanding the cause to the District Court for proceedings on final hearing with liberty to allow amendment of pleadings. P. 172.

11 F. (2d) 940, modified.

CERTIORARI, 273 U. S. 675, to a decree of the Circuit Court of Appeals rendered on appeal from an order of the

District Court overruling an application for an inter-
locutory injunction in a suit to restrain the City from
enforcing against the petitioner an ordinance concerning
the operation of motor busses. The Circuit Court of
Appeals reversed the District Court and directed a decree
granting the injunction, without specifying its scope.
Compare *City of Hammond* v. *Farina Bus Line, post,*
p. 173.

Mr. *C. B. Tinkham,* with whom Messrs. *Louis T. Mich-
ener* and *Gerald Gillett* were on the brief, for petitioner.

Mr. *William J. Whinery* for respondent.

Mr. Justice Brandeis delivered the opinion of the
Court.

This suit, which was commenced in the federal court
for Indiana in July, 1925, is here on certiorari to the
Circuit Court of Appeals. 273 U. S. 675. Schappi Bus
Line, Incorporated, an Illinois corporation, seeks to enjoin
the City of Hammond, Indiana, from enforcing its ordi-
nance No. 1945 concerning the operation of motor busses,
adopted May 23, 1925.[1] Section 1 prohibits the operation

---

[1] No. 1945.

An Ordinance Regulating and Routing Certain Vehicles for Hire and
Prohibiting Their Use of Certain Streets Within the City of
Hammond.

---

Section 1. Be It Ordained by the Common Council of the City of
Hammond, Indiana, that in order to promote public safety and order
and to diminish the congestion of vehicular travel within said City,
from and after the taking effect of this Ordinance, it shall be unlawful
for any person, firm, or corporation owning or operating any motor
vehicle engaged in transporting passengers for hire, to move or run
such vehicle on, upon, or over any of the following parts of streets
within said City of Hammond, to-wit:

On Hohman Street from Russell Street to Michigan Avenue;
On State Street from Morton Court to Calumet Avenue;

of any busses (with an exception to be noted) on certain streets which lead into and through the business district. Section 2 prohibits any busses (with the same exception) from stopping anywhere on any street in the City, either

On Sibley Street from the easterly line of the right-of-way of the Chicago, Indianapolis & Louisville Railway Company where the same crosses Sibley Street westerly to Morton Court;

On Fayette Street from Hohman Street to Oakley Avenue.

Section 2. From and after the taking effect of this Ordinance, it shall be unlawful for any person, firm, or corporation, owning or operating any motor vehicle carrying passengers for hire, to stop such vehicle for the purpose of receiving or discharging passengers upon any street, alley, or other public place within said City; provided, that the Board of Public Works may, for any period not exceeding six months or successions thereof, permit such operation on any or all of the following designated parts of streets: Columbia Avenue between the South city limits and the right-of-way of the Michigan Central Railroad where the same crosses said Columbia Avenue; Sibley Street from Columbia Avenue to the Easterly line of the right-of-way of the Chicago, Indianapolis & Louisville Railway Company; State Line Street from its Southerly terminus to its Northerly terminus at or near the right-of-way of said Michigan Central Railroad aforesaid; Rimbach Avenue from State Line Street to Ann Street; Ann Street from Rimbach Avenue to Russell Street; Russell Street from Ann Street to State Line Street, and for vehicles engaged strictly in interstate commerce any street or other public place North of 122nd Street and East of Calumet Avenue.

Section 3. Whoever violates any of the provisions of Sections 1 and 2 of this Ordinance shall, upon conviction, be fined in any sum not exceeding Fifty ($50.00) Dollars for each and every offense, but nothing in this Ordinance shall be construed to impair the obligation of any contract to which the City is a party under which such motor vehicles are now operated for hire within said City. Nothing herein shall apply to taxicabs.

Section 4. This Ordinance shall supplement such ordinances as are now in force, and repeal only so much of them or any part thereof as may be in direct conflict herewith.

GEO. J. WOLF,
President.

Attest:
ARNOLD H. KUNERT,
City Clerk.

to load or to discharge passengers, but reserves to the
Board of Public Works authority to grant, from time to
time, permission, for periods not exceeding six months, to
stop on portions of a few designated streets.

For some time prior to the adoption of the ordinance,
Schappi, Incorporated, had owned and operated a line of
motor busses between Chicago and Hammond; another
between Calumet City, Illinois, and Hammond; and one
from Calumet City through Hammond to East Chicago,
Indiana. The business is chiefly interstate; and on at
least one of the lines is wholly interstate. The bill
charges that for reasons there set forth the ordinance is
void; and alleges that, if enforced, it will compel aban-
donment of all existing bus lines operated by the plaintiff.
The case was heard upon an application for an interlocu-
tory injunction. The District Court denied it without
making any finding of fact and without an opinion or
other statement of the reasons for its action. The decree
was reversed by the Court of Appeals, which remanded
the case " with directions to enter a decree granting the
injunction," without specifying its scope. 11 F. (2d) 940.
That court, also, made no finding on any controverted
fact, save that it stated in its opinion " that the record
does not show any valid reason for the passage of such an
ordinance because of congestion in the streets. The rec-
ord shows that there was a parking privilege on both sides
of the streets in question of not less than an hour's limit,
very generally availed of."

The City of Hammond has an area of about 35 square
miles; much of it sparsely settled. It has 250 miles of
streets. Its population is 60,000. The terminal of the
three Schappi lines is on private property in the heart
of the business district. Schappi claims that the ordi-
nance not only denies access to its existing terminal, but
practically prevents its busses from coming within miles
of the business section. The City concedes that the ordi-

nance prohibits the continued operation of Schappi busses over their existing routes. It urges that, despite the prohibition of § 1 of the ordinance, Schappi busses might use other streets which would bring them within a short distance of the business district—and that it might, under § 2, secure permits to stop for loading and unloading which would adequately serve its purposes.

The City asserts that the purpose of the ordinance is to prevent congestion of traffic and to promote safety. Schappi insists that there is no congestion, even in the business district, except such as results, at times, from the passing of railroad trains at grade and from the allowance of unreasonable parking privileges; that the prohibition by § 2 of stopping to load or unload passengers is obviously arbitrary; and that the real purpose of the ordinance is disclosed by § 3 which provides that it shall not "be construed to impair the obligation of any contract to which the City is a party under which motor vehicles are now operated for hire within the City." It appears that, under a contract made by the City in 1924, the Calumet Motor Coach Company is authorized, for a period of twenty-five years, to run its coaches on any street of the City and to stop on any street in order to load or discharge passengers. Schappi asserts that the only purpose of the City in adopting the ordinance was to protect the Calumet Company from the competition of other bus lines. That company has, among other lines, one between Chicago and the business district of Hammond.

The issues of law are as serious and as numerous as those of fact. Schappi contends that the City lacked power to adopt any ordinance dealing with the subject, because by Act of March 4, 1925, Indiana General Assembly, pp. 138–142, and Act of March 14, 1925, Indiana General Assembly, pp. 570–607, the power to authorize use of the highways by motor busses was vested in the

Public Service Commission and Schappi had obtained from it certificates of public convenience and necessity specifically authorizing the use of the existing routes. Schappi contends further that, even if the City possessed the power to deal with the general subject, this ordinance is void, under other state statutes and under the constitution of the State, because it is unreasonable, arbitrary, and grossly discriminatory. And Schappi claims that, regardless of any power which state statutes may have purported to confer upon the City, the ordinance is void under the Commerce Clause, because all of its busses are operated in interstate commerce and the business is chiefly interstate, although some of the busses carry some intrastate passengers. Rights under the Fourteenth Amendment also were asserted.

The opinion of the Court of Appeals states that the ordinance must be sustained, if at all, as a police regulation; that, as such, it was clearly discriminatory; and that it must be held void on that ground. Whether the invalidity results from the provisions of a state statute, or from the constitution of the State, or from the Fourteenth Amendment is not stated. The court did not discuss the statutory powers of the City; declined to consider the effect of the recent state legislation particularly relied upon by the plaintiff; and did not even mention claims urged under the Commerce Clause. If, as Schappi contends, the ordinance is void under the state law, there is no occasion to consider whether it violates the Federal Constitution and there could be no propriety in doing so. Whether it is void under the law of Indiana involves questions upon which this Court should not be called upon to pass without the aid which discussion by members of the lower courts familiar with the local law would afford.

On the other hand, if it should become necessary to consider Schappi's rights under the Commerce Clause, it is

not fitting that these should be passed upon by this Court upon the present record and at this stage of the proceedings.   The general principles governing the rights of motor vehicles to use the highways in interstate commerce, *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570; *Buck* v. *Kuykendall,* 267 U. S. 307; *George W. Bush & Sons Co.* v. *Maloy,* 267 U. S. 317; the power of the State to regulate their use, *Kane* v. *New Jersey,* 242 U. S. 160; *Interstate Busses Corporation* v. *Holyoke Street Ry. Co.,* 273 U. S. 45; *Morris* v. *Duby,* 274 U. S. 135, 143; and its power to require users to contribute to the cost and upkeep, *Hendrick* v. *Maryland,* 235 U. S. 610; *Clark* v. *Poor,* 274 U. S. 554, have been settled by these recent decisions.[2]   But the facts here alleged may, if established, require the application of those principles to conditions differing materially from any heretofore passed upon by this Court.

The contentions made in the briefs and arguments suggest, among other questions, the following: Where there is congestion of city streets sufficient to justify some limitation of the number of motor vehicles to be operated thereon as common carriers, or some prohibition of stops to load or unload passengers, may the limitation or prohibition be applied to some vehicles used wholly or partly in interstate commerce while, at the same time, vehicles of like character, including many that are engaged solely in local, or intrastate, commerce are not subjected thereto?   Is the right in the premises to which interstate carriers would otherwise be entitled, affected by the fact that, prior to the establishment of the interstate lines,

[2] The protection afforded by the Fourteenth Amendment to motor carriers for hire using the highways exclusively in intrastate commerce was considered in *Packard* v. *Banton,* 264 U. S. 140, and in *Frost & Frost Trucking Co.* v. *Railroad Commission,* 271 U. S. 583. See also *Hess* v. *Pawloski,* 274 U. S. 352.

the City had granted to a local carrier, by contract or franchise, the unlimited right to use all the streets of the City, and that elimination of the interstate vehicles would put an end to the congestion experienced?    May the City's right to limit the number of vehicles, and to prohibit stops to load or unload passengers, be exercised in such a way as to allocate streets on which motor traffic is more profitable exclusively to the local lines and to allocate streets on which the traffic is less profitable to the lines engaged wholly, or partly, in interstate commerce?    Is limitation of the number of vehicles, or prohibition of stops to load or unload passengers, of carriers engaged wholly, or partly, in interstate commerce, justifiable, where the congestion could be obviated by denying to private carriers existing parking privileges or by curtailing those so enjoyed?    Are the rights of the interstate carrier in the premises dependent, in any respect, upon the dates of the establishment of its lines, as compared with the dates of the establishment of the lines of the local carrier?

These questions have not, so far as appears, been considered by either of the lower courts.    The facts essential to their determination have not been found by either court.    And the evidence in the record is not of such a character that findings could now be made with confidence.    The answer denied many of the material allegations of the bill.    The evidence consists of the pleadings and affidavits.    The pleadings are confusing.    The affidavits are silent as to some facts of legal significance; lack definiteness as to some matters; and present serious conflicts on issues of facts that may be decisive.    For aught that appears, the lower courts may have differed in their decisions solely because they differed as to conclusions of fact.    Before any of the questions suggested, which are both novel and of far reaching importance, are passed

upon by this Court, the facts essential to their decision should be definitely found by the lower courts upon adequate evidence.

There is an added reason why this Court should not now make the findings of fact or rulings of law involved in these contentions. The Court of Appeals erred in assuming, as its opinion discloses, that the case had been submitted below as upon final hearing; and that the appeal before it was from a final decree dismissing the bill. The appeal was from the interlocutory decree denying the preliminary injunction; and the record discloses no later proceedings in the District Court. The case was not yet ripe for final disposition by the Court of Appeals. Compare *Eagle Glass & Mfg. Co.* v. *Rowe*, 245 U. S. 275, 283. Findings and rulings if now made on the basis of the evidence presented at the hearing on the application for the temporary injunction, might be rendered of no avail by the presentation of other or additional evidence when the case comes on for final hearing.

Under these circumstances, we deem it proper that, without costs in this Court to either party, the decree of the Circuit Court of Appeals be modified by recognizing that the decree in the District Court was only interlocutory, by directing an injunction pending the suit, and by remanding the cause to the District Court for proceedings on final hearing, with liberty to that court, among other things, to allow amendment of the pleadings.[3]

*Decree modified and cause remanded to District Court.*

---

[3] Compare *Estho* v. *Lear*, 7 Pet. 130; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Tompkins*, 176 U. S. 167, 179; *United States* v. *Rio Grande Dam & Irrigation Co.*, 184 U. S. 416, 423; *Lincoln Gas & Electric Light Co.* v. *Lincoln*, 223 U. S. 349, 364.