**CHICAGO MERCANTILE EXCHANGE**
et al., Plaintiffs,

v.

Robert TIEKEN, United States District
Attorney for the Northern District
of Illinois, Defendant.

Civ. A. 58–C–1690.

United States District Court
N. D. Illinois, E. D.

Sept. 30, 1959.

J. Arthur Miller, Glenn G. Paxton and Jack K. Hudson, Campbell, Miller, Carroll & Paxton, Chicago, Ill., Donald R. Richberg, Washington, D. C., of counsel, for plaintiffs.

George Cochran Doub, Asst. Atty. Gen., Robert Tieken, U. S. Atty., Chicago, Ill., Donald B. MacGuineas, Harland F. Leathers, and Richard M. Meyer, Attys., Dept. of Justice, Washington, D. C., for defendant.

Harold W. Norman and George H. Redding, Jr., Norman, Engelhardt & Zimmerman, Chicago, Ill., for defendant-intervener.

Before HASTINGS, Circuit Judge, and PERRY and HOFFMAN, District Judges.

**HASTINGS, Circuit Judge.**

The sole question presented by the Government's motion to strike certain portions of the complaint in this case is whether this court can and/or should take evidence to test plaintiffs' assertion that there is no rational basis in fact for the act of Congress prohibiting contracts for the sale of onions for future delivery on or subject to the rules of any board of trade in the United States. See Title 7 U.S.C.A. § 13–1. Basically, it is the Government's position that the congressional hearings establish a rational basis for the enactment of the law and that this court is precluded from hearing, *de novo*, evidence upon an important question of national policy determined by Congress. It further urges that the law is within the limits of the commerce power and does not violate the due process clause of the Fifth Amendment. If these premises are accepted, then, the Government argues, the allegations against which the motion is made are immaterial and should be stricken.

**I.**

Plaintiffs contend that this court must take certain evidence before it can decide the basic constitutional questions raised by the complaint which are: (1) that the act is violative of due process in that it prohibits all persons under any circumstances from engaging in "an existing, lawful and essentially harmless business on or through a useful and lawful institution, to-wit: a board of trade, which is the only place where such lawful business can be transacted as a practical matter * * *"; (2) that the act is violative of due process in that it was arbitrarily and discriminatorily enacted without reasonable efforts being made to ascertain vital facts; and (3) that there is no rational basis in fact for the enactment.

Although stated as a separate ground of unconstitutionality, the argument that there is no rational basis in fact for the law would seem to be plaintiffs' conclusion based on its initial arguments that the act violates due process due to the essentially useful and harmless nature of the condemned activity and due to the failure of Congress to make reasonable efforts to ascertain vital facts as to the nature of the prohibited activity. Plaintiffs contend that various facts set forth in the allegations sought to be stricken, would, if proven, establish the essentially useful and harmless nature

of plaintiffs' operations and establish that those operations are entirely intrastate. Thus, plaintiffs urge, evidence must be taken on these allegations prior to any determination of the constitutional questions unless the facts so alleged are conceded or unless this court is prepared to take judicial notice thereof. Plaintiffs thus take the ultimate position that evidence must be taken to determine if there is a rational basis in fact for the law. The Government counters that the legislative record must first be considered; and, if it establishes a rational basis for the act, this court is bound by that record and the legislative pronouncements of the necessity for the questioned legislation.

■ It is my opinion that the Government finds more than adequate support for its position in the cases brought to our attention. Initially, plaintiffs concede, as they must, that should this court take evidence in this case, it cannot, if it arrives at different conclusions than those reached by Congress, substitute its conclusions for those of Congress. It has been held that a rational factual basis for particular legislation must be held to exist if the question of what the facts establish is a fairly debatable one, i. e., if the existence or nonexistence of a rational factual basis for the legislation is "fairly debatable" or "at least debatable." Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 594, 59 S.Ct. 744, 83 L.Ed. 1001; United States v. Carolene Products Co., 1938, 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234; Radice v. People of State of New York, 1923, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690. In the so-called constitutional-facts case, such as the instant one, therefore, the burden is on the party attacking a statute to establish beyond a reasonable doubt that there are no facts— social, economic or otherwise—which would justify the enactment of the law. The burden of proof thus imposed has the effect of requiring that facts be indisputable in order to render a statute invalid; such "indisputable facts" could properly be the subject of judicial notice. Thus, in United States v. Carolene Products Co., supra, which involved federal legislation prohibiting the sale of "filled milk," the Court upheld the law pointing out that where the existence of a rational basis for legislation depends on facts beyond the sphere of judicial notice, such facts might be made the subject of judicial inquiry, but that:

> "[B]y their very nature such inquiries, where the legislative judgment is drawn in question, *must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it.*" (Emphasis added.) United States v. Carolene Products Co., supra, 304 U.S. at page 154, 58 S.Ct. at page 784.

The Court added that it was evident from "all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited." Id., 304 U.S. at page 154, 58 S.Ct. at page 784.

■ The limits upon judicial inquiry in this type of case are thus clearly defined. Upon consideration of the legislative record and of matters of which it may take judicial notice, this court may proceed to take further evidence only if its initial limited inquiry leaves it with the definite conviction that there is no rational factual basis for the challenged legislation.

The binding effect upon the courts of legislative determinations of fact is illustrated in any number of cases. In Board of Trade of City of Chicago v. Olsen, 1923, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839, the Supreme Court rejected the contention that it must take evidence to determine whether facts or conditions, upon which the exercise of constitutional power depended, actually existed. Congress had enacted the Grains Futures Act to regulate sales of grain on the futures market. In referring to the legislative

findings which it held to be binding, the Court said,

> "It is clear from the citations, in the statement of the case, of evidence before committees of investigation as to manipulations of the futures market and their effect, that we would be unwarranted in rejecting the finding of Congress as unreasonable, and that in our inquiry as to the validity of this legislation we must accept the view that such manipulation does work to the detriment of producers, consumers, shippers and legitimate dealers in interstate commerce in grain and that it is a real abuse." Id., 262 U.S. at pages 37–38, 43 S.Ct. at page 477.

The Supreme Court similarly in Powell v. Commonwealth of Pennsylvania, 1888, 127 U.S. 678, 8 S.Ct. 992, 1257, 32 L.Ed. 253, held it unnecessary for evidence to be taken to prove that the defendant in that case was producing and selling an oleomargarine that was a wholesome and nutritious article of food. A Pennsylvania statute had prohibited the sale of oleomargarine in that state. The Supreme Court in holding the act valid said,

> "Whether the manufacture of oleomargarine, or imitation butter, of the kind described in the statute, is or may be conducted in such a way, or with such skill and secrecy, as to baffle ordinary inspection, or whether it involves such danger to the public health as to require, for the protection of the people, *the entire suppression of the business rather than its regulation* in such manner as to permit the manufacture and sale of articles of that class that do not contain noxious ingredients, are questions of fact and public policy which belong to the legislative department to determine." (Emphasis added.) Id., 127 U.S. at page 685, 8 S.Ct. at page 996.

More recent statements by the Supreme Court indicate further the position of that Court on this subject. See

Galvan v. Press, 1954, 347 U.S. 522, 529, 74 S.Ct. 737, 98 L.Ed. 911; American Communications Association, C.I.O. v. Doud, 1950, 339 U.S. 382, 400, 70 S. Ct. 674, 94 L.Ed. 925.

The cases upon which plaintiffs primarily rely are not to the contrary. In Chastleton Corp. v. Sinclair, 1924, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841, suit was brought to enjoin the enforcement of an order of the Rent Commission of the District of Columbia cutting rents for apartments under authority of a statute originally enacted in 1919. The original act had declared the existence of an emergency which justified rent control and had been reenacted in 1921 and 1922 with a declaration that the emergency continued to exist. The Court, while recognizing the deference due to legislative pronouncements on existing facts, stated that it was not at liberty to ignore an obvious mistake. The Court took judicial notice of the end of war conditions which had occasioned and justified the original enactment and sent the case back to the lower court for additional evidence, stating,

> "[I]f the question were only whether the statute is in force today, *upon the facts that we judicially know* we should be compelled to say that the law has ceased to operate. Here however it is material to know the condition of Washington at different dates in the past. Obviously the facts should be accurately * * * and carefully weighed, and this can be done more conveniently in the Supreme Court of the District than here." (Emphasis added.) Id., 264 U.S. at pages 548–549, 44 S.Ct. at page 406.

Borden's Farm Products Co. v. Baldwin, 1934, 293 U.S. 194, 55 S.Ct. 187, 189, 79 L.Ed. 281, also cited by plaintiffs involved the New York Milk Control Law of 1933 which authorized the fixing of minimum prices for sales of fluid milk by milk dealers to stores and which established a differential of one cent a quart in favor of dealers not having a "well advertised * * * name." The

Supreme Court noted the recommendations for price control in the milk industry made by a New York legislative committee after that committee's elaborate and extensive examination of the serious economic condition of the New York milk industry but pointed out that:

"The legislative committee did not, however, recommend the fixing of the differential here in question, and hence did not state grounds in support of such a discrimination." Id., 293 U.S. at page 205, 55 S.Ct. at page 190.

There being no support in the legislative record for the statutory provision and a rational basis for the act being predicated upon particular economic facts outside the scope of judicial notice, the Supreme Court held that the case should be remanded to the trial court for the taking of evidence and for findings as to those economic facts. The Court cited the Chastleton case and also City of Hammond v. Schappi Bus Line, 1927, 275 U.S. 164, 48 S.Ct. 66, 72 L.Ed. 218, as precedent for such disposition of the case. The latter case involved a city ordinance which, in effect, prohibited a certain bus line from continued operation over its existing routes. The declared purpose of the ordinance was to prevent traffic congestion and promote safety but there was no record of any hearings or findings to support the ordinance. The Court held that the case should properly be remanded for additional evidence and for findings on crucial questions of fact preliminary to any determination of the constitutional questions presented.

Plaintiff also seeks support in the case of Polk Company v. Glover, 1938, 305 U.S. 5, 59 S.Ct. 15, 17, 83 L.Ed. 6. That case involved a Florida statute, Acts 1937, c. 17783, which required that citrus products grown and canned in Florida carry the label "made in Florida" and that containers of these products be embossed with the single word "Florida." It additionally required that all imported citrus products be clearly labeled as to the state or country in which they were produced. The Polk Company brought suit to enjoin enforcement of the statute alleging that the embossing of the tin plate of cans would cause "hydrogen flippers" due to the action of the acid in the fruit upon the sheet steel underlying the tin plate through the weakening or penetration of the tin covering and that this would result in spoilage, swelling of cans, loss of products and unmarketability. The district court had dismissed the suit on the ground that no sufficient facts had been shown by affidavit or otherwise to overcome the findings of fact made by the legislature. The Supreme Court, in reversing the district court, stated,

"We think that the facts alleged in the bill were sufficient to entitle the plaintiffs to an opportunity to prove their case, if they could, and that the court should not have undertaken to dispose of the constitutional issues * * * in advance of that opportunity. The allegations of the bill as to trade conditions and practices, and as to the effect of the required embossing of cans, raise particular questions which can hardly be said to lie within the range of judicial notice. The salutary principle that the essential facts should be determined before passing upon grave constitutional questions is applicable." Id., 305 U.S. at pages 9–10, 59 S.Ct. at page 17.

This language would seem to lend strong support to plaintiffs' position. However, a cursory reading of the opinion of the district court in the case indicates that that court had *assumed* that the Florida legislature had made some investigation of the existing conditions and had acted advisedly. Polk Co. v. Glover, D.C.S.D.Fla.1938, 22 F.Supp. 575. There was no indication that any such investigation was made or that the legislature had considered the effect of the law on plaintiff or other persons similarly situated. The legislative record was thus insufficient to support the act and the Supreme Court, noting that the facts involved were beyond the scope of judicial notice, applied the principle of the

Borden and Chastleton cases that evidence should be taken and findings on crucial questions of fact be made prior to any decision on the constitutional question.

A case quite similar in its import to the Polk case is Weaver v. Palmer Brothers Co., 1926, 270 U.S. 402, 46 S.Ct. 320, 322, 70 L.Ed. 654. In that case a Pennsylvania statute purported to prohibit the use of "shoddy" in the manufacture of mattresses, pillows or stuffed furniture. Enforcement of the statute had been enjoined by the trial court and the statute had subsequently been invalidated. At the trial it had been readily conceded that "shoddy", which was made from either new or second-hand pieces of material, could be rendered harmless by sterilization and it stood "undisputed that all dangers to health [could] be eliminated by appropriate treatment at low cost." There was no reference to any legislative findings and it appears that there were none. The Court, upon this state of the record, held that the statute had properly been invalidated as violative of the due process clause since there was no basis for prohibiting the use of sterilized shoddy. The key factor in the case for our purposes is that there was no attack upon an extensive legislative record as basis for the legislative action such as we have before us now.

 In the final analysis it is the duty of the courts to keep in mind that their traditional power to pass upon legislation is merely the power of negation over the truly legislative function of determining matters of public policy and of shaping measures for dealing with the problems of society. In the exercise of this power the court must leave matters of public policy to the legislature.

"Matters of policy * * * are by definition matters which demand the resolution of conflicting values, and the elements of conflicting values are largely imponderable. Assessment of their competing worth involves differences of feeling; it is also an exercise in prophecy. Ob-viously the proper forum for mediating a clash of feelings and rendering a prophetic judgment is the body chosen for those purposes by the people. Its functions can be assumed by this Court only in disregard of the historic limits of the Constitution." A.F.L. v. American Sash & Door Co., 1949, 335 U.S. 538, 557, 69 S.Ct. 258, 260, 267, 93 L.Ed. 222 (concurring opinion of Mr. Justice Frankfurter).

To go beyond a legislative record which provides a rational basis for an enactment and to take evidence for the purpose of reassessing the legislative resolution of "conflicting values" and "competing worths" would amount to a usurpation by this court of the legislative function.

## II.

Plaintiffs have abandoned their position that there is an analogy between the function of the court in this case and the function of courts in the judicial review of administrative proceedings for the reason, that, in reviewing administrative findings, courts do not take additional evidence. Abandonment of this contention necessarily follows from their insistence that it is the duty of this court to take evidence in the process of initially assessing the legislative record. As indicated in part I of this memorandum, however, if it is determined by this court that, upon the legislative record and matters judicially noted, a rational factual basis exists for the legislation, we would be precluded from taking further evidence.

 In evaluating the legislative record, it must be kept in mind that Congress need not take evidence in accordance with the rules applicable in judicial hearings. See Moore v. Chicago Mercantile Exchange, 7 Cir., 1937, 90 F.2d 735, 740, certiorari denied 302 U.S. 710, 58 S.Ct. 30, 82 L.Ed. 548. Plaintiffs repeated assertions that the findings of Congress are based upon unsupported conclusions and hearsay are necessarily to be considered in that light. It is true that a major portion of the record before

the various legislative subcommittees consists of evidence which would not have been admissible in a court of law; but, for the purpose of determining whether a rational factual basis exists for the act, this court cannot discount this evidence.

After careful consideration of the legislative record, this court can only conclude that the question is "at least debatable": whether commerce in onions futures should be wholly prohibited, and that, therefore, a rational factual basis exists for the act. The evidence before Congress affords reasonable grounds for concluding that speculative trading in the onions futures market causes unwarranted fluctuations in the cash price of onions and that these fluctuations impede the orderly flow of onions in interstate commerce. From the evidence it can also reasonably be concluded that regulation of the onions futures market has not and cannot cure the situation which exists. There was much testimony to the effect that onions, because of their perishable nature and because of the fact that they are a relatively small crop and require very little processing before sale, are not a proper commodity for trade on the futures market. A great deal of testimony lends support to the conclusion that at least one of the causes of overproduction of onions is the futures market and, further, that producers and growers of onions do not use futures trading for hedging purposes to any appreciable extent.

An effective argument can be made from the testimony presented favoring continued trading in onions futures that this legislation is unwarranted and unwise. But these matters were all before Congress; and, Congress, having weighed these factors, has reasonably concluded that a complete prohibition of trading in onions futures is socially and economically desirable. It is not for this court to abort a legislative announcement of general economic policy on the ground that it might consider it to be unwise.

### III.

The Government has moved this court to strike all the allegations in paragraphs 6 through 37 of the complaint with the exception of the allegations in paragraph 12(b).

Initially, I would deny the motion as to paragraphs 12 and 15 since those paragraphs deal with the regulation of trade in futures under an act of Congress of which this court may take judicial notice.

The motion should be granted as to paragraphs 6 through 11. These allegations are descriptive of the nature of futures trading and, while they may be relevant to the question of the power of Congress to prohibit rather than regulate trading in onions futures, this court can take judicial notice from the provisions of the Commodity Exchange Act that futures trading is generally accepted, under proper regulation as a useful and lawful business. See Title 7 U.S. C.A. § 5.

The motion should be granted as to paragraphs 13, 14, 16 through 23, and 25 through 31, since these deal with facts found by Congress.

The motion should be denied as to 32 through 37 since these paragraphs set forth the various allegations of unconstitutionality. Likewise the motion should be denied as to paragraph 24 which sets forth what plaintiffs consider to be the intrastate character of their business. If these allegations were stricken, we would be granting the Government, in effect, a summary judgment. Upon entering our order on the motion to strike, we invite the Government to make a motion for summary judgment.

An order agreeable with this opinion follows:

On consideration of defendant's motion to strike all of the allegations in paragraphs 6 through 37, except 12(b), from the plaintiffs' amended complaint, the briefs in support of and in opposition to such motion and oral argument heard thereon;

It Is Ordered that defendant's motion to strike be granted in the following particulars and the following allegations be stricken from the plaintiff's amended complaint:

All of the allegations in paragraphs 6, 7, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30 and 31.

It Is Further Ordered that said motion be denied as to the following allegations in the plaintiffs' amended complaint:

All of the allegations in paragraphs 12, 15, 24, 32, 33, 34, 35, 36 and 37.